**No. 2025-1570**

# United States Court of Appeals for the Federal Circuit

RAVGEN, INC.,

*Plaintiff-Appellee,*

*v.*

LABORATORY CORPORATION OF AMERICA HOLDINGS,

*Defendant-Appellant.*

Appeal from the United States District Court for the Western District of Texas in No. 6:20-cv-00969-ADA, District Judge Alan D. Albright

**NONCONFIDENTIAL REPLY BRIEF OF DEFENDANT-APPELLANT LABORATORY CORPORATION OF AMERICA HOLDINGS**


John R. Boulé III
JONES DAY
555 South Flower St.
50th Floor
Los Angeles, CA 90071
(213) 489-3939

Gregory A. Castanias
Tracy A. Stitt
Amelia A. DeGory
Brendan D. Duffy
JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001
(202) 879-3939

*Counsel for Defendant-Appellant Laboratory Corporation of America Holdings*

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES .......... iii

TABLE OF ABBREVIATIONS .......... viii

INTRODUCTION .......... 1

ARGUMENT .......... 1

I. LABCORP IS ENTITLED TO JMOL OF NONINFRINGEMENT .......... 1

A. Labcorp's Tests Do Not Perform the "Determining" Limitation .......... 1

1. Labcorp did not forfeit its "determining" argument .......... 1

2. Dhallan's lexicography compels JMOL .......... 2

B. No Reasonable Jury Could Find the "Agent" Limitation Infringed .......... 6

1. No literal infringement .......... 6

2. No equivalents infringement .......... 11

II. THE COURT ERRED BY REMOVING LABCORP'S INVALIDITY DEFENSES FROM THE JURY .......... 13

III. THE COURT ABUSED ITS DISCRETION BY REFUSING TO HOLD A HEARING ON EQUITABLE ESTOPPEL .......... 17

IV. THE EXCESSIVE DAMAGES AWARD WAS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND PRODUCED BY UNRELIABLE EXPERT TESTIMONY .......... 21

A. Meyer Failed to Apportion .......... 21

B. Admitting Meyer's Testimony Was an Abuse of Discretion .......... 22

C. Excluding Prowse's Testimony Was a Further Abuse of Discretion .......... 28

V. RAVGEN CANNOT SALVAGE THE WILLFULNESS AND ENHANCEMENT RULINGS .......... 29

A. Ravgen Failed to Prove That Labcorp Believed It Was Infringing .......... 29

1. Labcorp's understanding of Streck's tubes contradicts any inference of willfulness .......... 29

## TABLE OF CONTENTS
(continued)


**Page**

2. A years-old hearsay remark cannot support the willfulness verdict ....... 30

B. Ravgen's Legal Violations and the Court's Evidentiary Error Independently Require Reversal ....... 31

C. No "Egregious," "Pirate"-Like Conduct Merited the $100 Million Penalty ....... 33

CONCLUSION ....... 36

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF COMPLIANCE WITH RULE 25.1(e)(2)

CERTIFICATE OF SERVICE


***CONFIDENTIAL MATERIAL OMITTED***

The material omitted on page 24 describes a detail of a licensing agreement with third party PerkinElmer. The omitted material contains information that Ravgen has indicated is confidential and governed by the protective order, *see* AppxI-XV.

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ABB Robotics, Inc. v. GMFanuc Robotics Corp.*,
52 F.3d 1062 (Fed. Cir. 1995) ....................20

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012) ....................8, 9

*AdvoCare Int'l LP v. Horizon Labs., Inc.*,
524 F.3d 679 (5th Cir. 2008) ....................17

*Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*,
841 F.3d 1334 (Fed. Cir. 2016) ....................19

*Amgen Inc. v. F. Hoffman-La Roche Ltd.*,
580 F.3d 1340 (Fed. Cir. 2009) ....................12

*Apotex Inc. v. UCB, Inc.*,
763 F.3d 1354 (Fed. Cir. 2014) ....................19

*AquaTex Indus., Inc. v. Techniche Sol'ns*,
479 F.3d 1320 (Fed. Cir. 2007) ....................12

*Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*,
605 F.3d 1305 (Fed. Cir. 2010) ....................20

*Bayer Healthcare LLC v. Baxalta Inc.*,
989 F.3d 964 (Fed. Cir. 2021) ....................29

*Brooke Grp. Ltd. v. Williamson Tobacco Corp.*,
509 U.S. 209 (1993)....................8

*Cal. Ridge Wind Energy LLC v. United States*,
959 F.3d 1345 (Fed. Cir. 2020) ....................19

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Cardiac Pacemaker, Inc. v. St. Jude Med., Inc.*,
381 F.3d 1371 (Fed. Cir. 2004) ....................3, 4

*Chiron Corp. v. Genentech, Inc.*,
363 F.3d 1247 (Fed. Cir. 2004) ....................5

*Dominion Energy, Inc. v. Alstom Grid LLC*,
725 F. App’x 980 (Fed. Cir. 2018) ....................8, 11

*Dynamic Drinkware, LLC v. Nat’l Graphics, Inc.*,
800 F.3d 1375 (Fed. Cir. 2015) ....................14, 15

*E.I. DuPont de Nemours & Co. v. Synvina C.V.*,
904 F.3d 996 (Fed. Cir. 2018) ....................15

*EcoFactor, Inc. v. Google LLC*,
137 F.4th 1333 (Fed. Cir. 2025) (en banc) ....................21, 22, 23

*Enplas Display Device Corp. v. Seoul Semiconductor Co.*,
909 F.3d 398 (Fed. Cir. 2018) ....................8

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp.*,
879 F.3d 1332 (Fed. Cir. 2018) ....................21, 28

*Finisar Corp. v. DirecTV Grp.*,
523 F.3d 1323 (Fed. Cir. 2008) ....................3

*First Fed. Lincoln Bank v. United States*,
518 F.3d 1308 (Fed. Cir. 2008) ....................8

*Fractus, S.A. v. Samsung Elecs. Co.*,
876 F. Supp. 2d 802 (E.D. Tex. 2012) ....................18

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
579 U.S. 93 (2016)....................................................................................34

*Innogenetics, N.V. v. Abbott Labs.*,
512 F.3d 1363 (Fed. Cir. 2008) ..........................................................................5

*Jiaxing Super Lighting Elec. Appliance, Co. v. CH Lighting Tech. Co.*,
146 F.4th 1098 (Fed. Cir. 2025) ...................................................................22, 27

*Kinetic Concepts, Inc. v. Blue Sky Med. Grp.*,
554 F.3d 1010 (Fed. Cir. 2009) ......................................................................3, 4

*Lab. Corp. of Am. Holdings v. Qiagen Scis., LLC*,
148 F.4th 1350 (Fed. Cir. 2025) .........................................................................3

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
694 F.3d 51 (Fed. Cir. 2012) .......................................................................26, 27

*Magēmā Tech. LLC v. Phillips 66*,
153 F.4th 1248 (Fed. Cir. 2025) ...................................................................13, 16

*Microsoft Corp. v. i4i L.P.*,
564 U.S. 91 (2011)....................................................................................15

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008) ..........................................................................2

*Olaplex, Inc. v. L'Oréal USA, Inc.*,
855 F. App'x 701 (Fed. Cir. 2021) .....................................................................16

*Omega Pats., LLC v. CalAmp Corp.*,
920 F.3d 1337 (Fed. Cir. 2019) ........................................................................33

**TABLE OF AUTHORITIES**
(continued)


**Page(s)**

*Oracle Am., Inc. v. Google Inc.*,
No. 10-cv-035161, 2012 WL 1965778 (N.D. Cal. May 31, 2012) ....................17

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc) ..........................................................3

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
875 F.3d 1369 (Fed. Cir. 2017) ........................................................................34

*Rex Med., L.P. v. Inuitive Surgical, Inc.*,
156 F.4th 1289 (Fed. Cir. 2025) ..................................................................25, 28

*Romag Fasteners, Inc. v. Fossil, Inc.*,
817 F.3d 782 (Fed. Cir. 2016) ..........................................................................19

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
14 F.4th 1323 (Fed. Cir. 2021) ........................................................................34

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
254 F. Supp. 3d 680 (D. Del. 2017)..................................................................35

*Streber v. Hunter*,
221 F.3d 701 (5th Cir. 2000) ...........................................................................13

*Tech. Licensing Corp. v. Videotek, Inc.*,
545 F.3d 1316 (Fed. Cir. 2008) ..................................................................14, 15

*Top Brand LLC v. Cozy Comfort Co.*,
143 F.4th 1349 (Fed. Cir. 2025) ..........................................................................2

*Welker Bearing Co. v. PHD, Inc.*,
550 F.3d 1090 (Fed. Cir. 2008) ........................................................................10

*Whitserve, LLC v. Comput. Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012) ............................................................................27

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Wonderland Switz. AG v. Evenflo Co.*,
Nos. 23-2043, 23-2233, 23-2326, 2025 WL 3648495
(Fed. Cir. Dec. 17, 2025) ....................29

**STATUTES**

35 U.S.C. § 298 ....................31, 32

35 U.S.C. § 315 ....................16, 17

**OTHER AUTHORITIES**

Fed. R. Evid. 103 ....................32

Fed. R. Evid. 602 ....................33

W.D. Tex. Local Civil Rules ....................18

## TABLE OF ABBREVIATIONS

In addition to the abbreviations utilized in Labcorp's opening brief (LabcorpBr.xi), the following abbreviations are utilized in this reply brief:

| Abbreviation | Term |
|---|---|
| LabcorpBr. | Labcorp's opening brief in this case, Dkt. 19 |
| RavgenBr. | Ravgen's brief in this case, Dkt. 23 |

All emphasis is added throughout, and all internal case citations are omitted from citations, unless otherwise indicated.

## INTRODUCTION

Ravgen claimed targeted sequencing but ensnared Labcorp's random MPSS as infringing. It claimed formaldehyde but read those claims onto industry-standard tubes that do not use formaldehyde to inhibit cell lysis, and indeed use a formaldehyde quencher to prevent that. It obtained monstrous royalty damages, later enhanced despite no showing of "egregious," "pirate"-like conduct, based on inapposite settlements and licenses. And Labcorp was repeatedly denied fair procedures along the way to this outcome. The judgment should be reversed.

## ARGUMENT

# I. LABCORP IS ENTITLED TO JMOL OF NONINFRINGEMENT

## A. Labcorp's Tests Do Not Perform the "Determining" Limitation

The '277 patent claims only targeted sequencing, which requires first selecting a region of DNA for sequencing. Dhallan's lexicography on the "determining" limitation confirms this, but the court refused to enforce it. JMOL of noninfringement follows from a correct construction. LabcorpBr.23-29.

### 1. Labcorp did not forfeit its "determining" argument

Labcorp's lexicographical "determining" argument is what PerkinElmer argued. Appx39648-39651. Labcorp adopted PerkinElmer's argument. LabcorpBr.24 n.1. The court rejected it. Appx41504-41509. That was not forfeiture.

Labcorp was not required to re-raise that argument post-*Markman*. RavgenBr.26. The court's rejection was conclusive, with no indication it was "open to changing its claim construction" thereafter. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1359 (Fed. Cir. 2008); *Top Brand LLC v. Cozy Comfort Co.*, 143 F.4th 1349, 1356 (Fed. Cir. 2025). Nor is there waiver from Labcorp's footnote (LabcorpBr.24 n.1) explaining this procedure. RavgenBr.26-27.

### 2. Dhallan's lexicography compels JMOL

**a.** The court's failure to recognize that the claims are drawn to targeted DNA sequencing prejudiced Labcorp. LabcorpBr.23-26; *contra* RavgenBr.27. Labcorp's tests sequence random, *unselected* pieces of DNA via MPSS, not a "selected region of nucleic acid." LabcorpBr.27-29.

Adopting "plain and ordinary meaning" (Appx40134)—i.e., giving no judicial construction—allowed Ravgen witnesses to testify, and Ravgen to argue, that "any method" that sequences DNA satisfies the claim. Appx25063-25064(385:21-386:2) (Ravgen's expert); Appx24923-24924(245:16-246:8) (Dhallan). Ravgen's counsel did just this in closing: He argued the "any method" language was the limitation's meaning; dismissed the relevance of MPSS—"If I hear the phrase 'massively parallel shotgun sequencing' one more time, I'm going to blow my brains out"; accused Labcorp of "trying to trick" and "fool" the jury;

and concluded: "These guys are not trustworthy." Appx26025-26026(1347:13-1348:23).

A proper construction would have prevented these inflammatory claims. At minimum, a new trial under a correct construction is compelled. *Cardiac Pacemaker, Inc. v. St. Jude Med., Inc.*, 381 F.3d 1371, 1383 (Fed. Cir. 2004). But a new trial is unnecessary: Labcorp's MPSS does not sequence "selected regions" of DNA, so "no reasonable jury could have found infringement under the proper claim construction." *Finisar Corp. v. DirecTV Grp.*, 523 F.3d 1323, 1333 (Fed. Cir. 2008); LabcorpBr.27-29.

**b.** That "the jury heard the patent's definitions of both 'locus of interest' and 'sequence'" does not make the error "harmless." RavgenBr.28. It underscores the harm: "It was error for the district court to turn a matter of claim construction over to the jury to decide as a factual dispute." *Lab. Corp. of Am. Holdings v. Qiagen Scis., LLC*, 148 F.4th 1350, 1358 (Fed. Cir. 2025). Inventor lexicography is a legal claim-construction question, not for the jury. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316-17 (Fed. Cir. 2005) (en banc).

*Kinetic Concepts, Inc. v. Blue Sky Medical Group*, 554 F.3d 1010 (Fed. Cir. 2009) (RavgenBr.28), is case-specific and inapposite. There, "failure to instruct the jury on the construction … *in this case* was harmless" "[b]ecause the jury's verdict is supported under the proper construction," and "*under the circumstances*

*of this case*" there was "no danger" the jury "may have used an incorrect construction." *Id.* at 1019. The opposite is true here: A correctly instructed jury could (and should) have come out differently. *Cardiac Pacemaker*, 381 F.3d at 1383.

**c.** Ravgen's "comprising" argument also fails. RavgenBr.28. The claims may allow simultaneous sequencing of multiple loci "of interest," but they must first be *selected*. LabcorpBr.24-26.

Ravgen's "comprising" argument shows why JMOL is compelled. Ravgen acknowledges that MPSS first sequences all the random DNA fragments in the sample, and only afterward "determines *where* in the genome the sequenced fragments come from, by 'mapping' them to their 'origin/position.'" RavgenBr.28. That is the opposite of sequencing "a selected region." LabcorpBr.27-29.

**d.** Ravgen says Dhallan's lexicography "does not mean that Claim 132 requires first 'selecting a region' before sequencing." RavgenBr.29. This ignores his "intentional grammatical choice" of the past participle "select**ed**" in his locus-of-interest definition: Requiring "'determining the sequence of' a '*selected* region of nucleic acid' without first *selecting* that region" is impossible. LabcorpBr.24-25.

It also ignores the historical record. The specification's general statement that "[a]ny method that provides information on the sequence of nucleic acid can be used" is not in the claims; as argued by Ravgen, it would erase the "selected region" requirement. LabcorpBr.26-27. Plus, in 2002-2003, "any method" meant only *targeted* sequencing methods. Appx25443-25444(765:25-766:19). The claims, lexicography, and every given example of sequencing methods require targeted sequencing—even Ravgen's "preferred method of determining the sequence" was Dhallan's targeted-sequencing patent. LabcorpBr.26. Dependent claims detailing *specific types* of targeted sequencing confirm that the broader claims require targeted sequencing. RavgenBr.30.

MPSS—which undisputedly arose long after Ravgen's patent—does not sequence a "selected region of nucleic acid." "[C]ase law allows for after-arising technology to be captured," but only if the claims "are drafted broadly enough." *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1371-72 (Fed. Cir. 2008); *see also Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1254 (Fed. Cir. 2004). Ravgen's patent doesn't allow for such a reading. LabcorpBr.24-27.

Ravgen's cursory dismissal of *Quake* and *Stanford* as "irrelevant" (RavgenBr.31) shows why reversal is compelled. Those cases say MPSS and targeted sequencing are so "patentably distinct" that "disclosing only targeted sequencing does not provide written-description support for a claim purporting to

cover 'conducting massively parallel DNA sequencing of DNA fragments.'" LabcorpBr.28; *see also id.* at 7-8. MPSS cannot infringe a claim requiring targeted sequencing.

Finally, Ravgen's passing assertion that "MPSS uses hybridization and microarray techniques that are in the specification" (RavgenBr.31, citing Appx188(6:26-34)) does not make MPSS a form of targeted sequencing. Those techniques are used in both targeted and random sequencing; "determin[ing] the identity of" nucleotides "of a selected region" of nucleic acid is only targeted sequencing.

### B. No Reasonable Jury Could Find the "Agent" Limitation Infringed

Claim 132 requires "formaldehyde" to be the "***agent that inhibits lysis of cells***." That demands more than just "releas[ing]" formaldehyde. RavgenBr.32. Ravgen failed to show that any formaldehyde in the Streck tubes—90 parts per million at most (Appx25160(482:9-483:8))—"inhibits lysis of cells." LabcorpBr.29-34. Ravgen's arguments do not show otherwise, literally or by equivalents. RavgenBr.32-38.

#### 1. No literal infringement

Ravgen had to show any formaldehyde present in the tubes was the "agent that inhibits lysis of cells." It didn't. Ravgen's infringement theory and appellate arguments elide this dispositive difference. Ravgen pointed to IDU, labeled it a

"formaldehyde releaser," and asserted that the Streck tubes infringe because IDU released formaldehyde within the Streck tube. "That's the end of it, baby, right there." Appx26032(1354:16-17). That wasn't the end of it, because Ravgen did not show that trace formaldehyde in the Streck tubes actually "inhibits lysis of cells."

**a.** Ravgen says "Van Ness testified that IDU works by way of formaldehyde" to inhibit cell lysis because any formaldehyde released by IDU "'cross-links' the cell membrane to inhibit cell lysis." RavgenBr.33-34. He asserted that the scant amount of formaldehyde allegedly released was the claimed "agent," giving no basis for that conclusion. LabcorpBr.29-33.

Ravgen does not meaningfully defend Van Ness's unsupported testimony. It says "the jury was permitted to credit" his "understanding" of the "two inputs" to his analysis—the Streck 510(k) and Sequenom feasibility report. RavgenBr.34.[1] This is not substantial evidence: Neither "input" "showed that any formaldehyde supposedly released by IDU in the Streck tubes inhibited cell lysis." LabcorpBr.30-32. And Van Ness's claim (Appx25111-25112(433:7-434:15)) that the purported formaldehyde in the Streck tubes inhibited cell lysis, RavgenBr.33-34, fails for the same reasons—it misread Streck's 510(k). LabcorpBr.30-31.

[1] Ravgen nowhere relies on the Chalmers flow-cytometry tests, tacitly admitting they cannot support the verdict. LabcorpBr.32-33.

Contrary to Ravgen's efforts to reframe the issue as presenting "alternative inferences from the documents" (RavgenBr.34), this is a basic substantial-evidence failure: Van Ness's testimony contradicted the record evidence on which he claimed to rely. "When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Brooke Grp. Ltd. v. Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993); *see also First Fed. Lincoln Bank v. United States*, 518 F.3d 1308, 1319 (Fed. Cir. 2008).

In *Dominion Energy, Inc. v. Alstom Grid LLC*, 725 F. App'x 980 (Fed. Cir. 2018), this Court applied this principle and reversed because the expert's testimony was "contrary to the evidence in th[e] case"—a "User's Guide" for the product at issue—leaving it "unsupported." *Id.* at 986-87. *Dominion* thus cannot be distinguished by saying "the expert there 'did not cite any particular documents' at all." RavgenBr.34-35. Van Ness's testimony was "contrary to" his "two inputs."

Nor is this an admissibility issue. *See* RavgenBr.34. *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 411 n.2 (Fed. Cir. 2018), explains that whether an expert's admitted testimony constitutes substantial evidence is distinct from admissibility. *ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*, 694 F.3d 1312 (Fed. Cir. 2012), is similarly irrelevant—it

applies the substantial-evidence standard, *id.* at 1321, nowhere holding that all admitted expert testimony is perforce substantial evidence.

**b.** Ravgen then pivots and argues that "evidence *apart from Dr. Van Ness* also showed infringement." RavgenBr.35. This other evidence has the same defects—it purports to show only that tiny amounts of formaldehyde may be present in Streck tubes. It does not show that those amounts act as an "agent that inhibits cell lysis." Streck's CEO's testimony (Appx25521(843:18-23); *see* RavgenBr.35) shows that Streck used IDU "rather than formaldehyde," but not that IDU-released formaldehyde inhibited cell lysis. Similarly, Streck's FDA submission (Appx37497-37601) and Labcorp scientific reports (Appx37188; Appx37328) speak only to IDU's cross-linking to stabilize cell membranes and the undesirability of formaldehyde (*see also* Appx25544-25545(866:22-867:5)); they neither say nor fairly imply that formaldehyde (rather than IDU) is doing the cross-linking *in Streck's tubes*.

That leaves Ravgen to argue that if cross-linking was occurring inside the tubes, it must have been done by formaldehyde. RavgenBr.35. No evidence supports that *ipse dixit*. Here, Ravgen seeks to invert the burden of proof, urging that "Labcorp's expert had no data to refute Streck's FDA statements that cross-linking was the way Streck's tubes work," and because Labcorp did not prove formaldehyde was not the cross-linker, Ravgen wins. RavgenBr.35 (citing

Appx25801-25803(1123:21-1125:18)). It was not Labcorp's burden "to disprove" infringement. *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1095 (Fed. Cir. 2008). Significantly, Streck's FDA submission mentions "formaldehyde" only six times—all saying that the glycine "quenches" and "prevents any free formaldehyde from reacting with" the cell-free DNA. Appx37536, Appx37537, Appx37540. That submission's singular reference to "cross-link[ing]" says: "The Germall [IDU] cross-links within the membrane." Appx37537. Not formaldehyde—it is "quench[ed]."

**c.** Ravgen's final defense is that Labcorp's arguments (LabcorpBr.30-32) "are all irrelevant and ask this Court to re-weigh the evidence." RavgenBr.35. Not so. There is *no evidence* supporting Ravgen's claim that any formaldehyde in the Streck tubes prevents cell lysis.

The "multiple third-party studies" (RavgenBr.36, citing Appx25795-25798(1117:20-1120:6); Appx37605; Appx37621) are insufficient. The cited testimony suggests only "trace amounts" or "a low level" of free formaldehyde in the Streck tubes, either "prior to blood being added to it" or afterward. The two cited documents are to like effect. And Labcorp's expert's testimony (in response to Ravgen's counsel's hypotheticals) establishes only that when formaldehyde reacts to glycine or a cell membrane, that "can" cause "additional formaldehyde to be released from IDU into the sample" to maintain equilibrium. Appx25800-

25801(1122:18-1123:8). It does not show that any formaldehyde present is the "agent that impedes cell lysis."

Ravgen's string citations of Van Ness's testimony, RavgenBr.36, similarly grasp at straws. Here, Van Ness gave conclusory testimony that any formaldehyde in the Streck tube is "reacting with the proteins in the cell membrane." Appx25962(1284:10). The problem—which Labcorp highlighted but Ravgen ignores—is that Van Ness had *no support* for that claim. LabcorpBr.29-33. And "just saying that something is so does not make it true, especially when there is no record support and, in fact, [evidence] indicates otherwise." *Dominion*, 725 F. App'x at 986.

### 2. No equivalents infringement

Ravgen provided no substantial evidence that IDU is equivalent to formaldehyde. Its case lacked "particularized testimony and linking argument"—it was based on a single question-and-answer from Van Ness. LabcorpBr.33-34. Ravgen does not defend this testimony as adequate, instead accusing Labcorp of "ignoring other particularized testimony and linking argument in the record." RavgenBr.37. Here Ravgen cobbles together record shreds, violating the rule that equivalents evidence and argument "cannot merely be subsumed in plaintiff's case of literal infringement." LabcorpBr.34.

**a.** Ravgen says "the use of a delayed-release compound that breaks down formaldehyde and inhibiting cell lysis that way is equivalent to adding formaldehyde as a reagent." RavgenBr.37. No "particularized testimony and linking argument" supported that claim. Ravgen stirs together scattered citations—general testimony about the Streck tubes' components (Appx25095-25096(417:18-418:4)) and nine paragraphs from Streck's patent application (Appx37457-37458([0006]-[0015]). Yet Streck's application emphasizes the "unreliability and toxicity" and thus undesirability of formaldehyde (Appx37458([0009]), and the preference for IDU (Appx37460([0030]). That is evidence of difference, not equivalence. It is legally insufficient besides: "[T]he difficulties and complexities of the doctrine require that evidence be presented to the jury or other fact-finder *through the particularized testimony of a person of ordinary skill in the art.*" *AquaTex Indus., Inc. v. Techniche Sol'ns*, 479 F.3d 1320, 1329 (Fed. Cir. 2007).

**b.** Ravgen next argues that "Labcorp's expert conceded that the function-way-result test is satisfied." RavgenBr.37. Not so. Its citation (Appx25802-25803(1124:17-1125:9)) shows only that Labcorp's expert agreed that IDU and formaldehyde each can stabilize cell membranes by cross-linking. That is neither "particularized" nor probative of the insubstantial-differences or function-way-result tests. *Amgen Inc. v. F. Hoffman-La Roche Ltd.*, 580 F.3d 1340, 1382 (Fed. Cir. 2009).

## II. THE COURT ERRED BY REMOVING LABCORP'S INVALIDITY DEFENSES FROM THE JURY

This case was tried to a jury two months before the PTAB decided the '277 IPRs. Labcorp's invalidity defenses were thus appropriately presented to the jury. Had they not been ruled out by the court's erroneous legal rulings, those defenses would likely have succeeded in invalidating Ravgen's claims. At minimum, these rulings opened the door to Ravgen's unfair and prejudicial "broken promises" argument.

**A.** Under Fifth Circuit law, "if it is 'reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done,'" then "[a] district court abuses its discretion in denying a motion for new trial." *Magēmā Tech. LLC v. Phillips 66*, 153 F.4th 1248, 1257-58 (Fed. Cir. 2025) (quoting *Streber v. Hunter*, 221 F.3d 701, 736 (5th Cir. 2000)). The court's peremptory, procedurally improper grant of judgment to Ravgen—*even if* the issue cannot be relitigated on remand because of IPR estoppel—deprived Labcorp of a fair trial. A new trial where Labcorp is not prejudicially tarnished with inaccurate claims of broken promises is compelled.

Only after five pages of argument about estoppel (addressed in Section II(B), below) does Ravgen attempt to defend the court's decision. Neither stands on solid ground.

*First*, Ravgen says Labcorp's objection to summary judgment of no anticipation (LabcorpBr.35) is "moot" because Labcorp did not offer an anticipation defense to claim 132. RavgenBr.43-44. But Labcorp had a declaratory-judgment claim for invalidity of "[e]ach and every claim of the '277 patent," not just claim 132. Appx5026 (Answer and Counterclaims); *see also* Appx20782, Appx20788 (Pretrial Order).

Ravgen's further claim that there are "three categories of agents," RavgenBr.44, seeks to argue that ACD is not a cell-lysis inhibitor but a "membrane stabilizer." This elides the claims' requirement that the "agent" be "an agent that inhibits lysis of cells." The "three categories" are not distinct or mutually exclusive, but rather overlapping labels for types of cell-lysis inhibitors—ACD is both "the membrane stabilizer and agent for inhibiting lysis of blood cells during storage," as Labcorp explained to the court. Appx14838.

*Second*, on the priority issue, Ravgen seeks to make that part of Labcorp's burden of proof on invalidity, notwithstanding *Dynamic Drinkware, LLC v. National Graphics, Inc.*, 800 F.3d 1375 (Fed. Cir. 2015) and *Technology Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316 (Fed. Cir. 2008). RavgenBr.44-47. Ravgen is wrong to say it bore no "burden of 'proof'" on priority. RavgenBr.45. *Technology Licensing* says both the burden of *persuasion* and the burden of *going forward with evidence* (Ravgen calls the latter "the burden of production") are

accurately understood as "burdens of proof." 545 F.3d at 1326-27. And Ravgen admits that, as to seeking a priority date for Landes earlier than its filing date, it—Ravgen—bore that burden. RavgenBr.45-46.

"[T]he phrase 'going forward with evidence' … mean[s] both producing additional evidence and presenting persuasive argument based on new evidence or evidence already of record, as the case may require." *Tech. Licensing*, 545 F.3d at 1327; *see also Dynamic Drinkware*, 800 F.3d at 1379-80 (same). Here, a reasonable jury could easily have concluded that Ravgen's efforts to demonstrate an earlier priority date were not sufficiently persuasive to depart from Landes's publication date. Had it so found, Labcorp would have prevailed.

Ravgen suggests that *Microsoft Corp. v. i4i L.P.*, 564 U.S. 91 (2011), undercuts *Technology Licensing*, at least where "a patentee bears a burden of proof on priority in district court." RavgenBr.45. But *E.I. DuPont de Nemours & Co. v. Synvina C.V.*, 904 F.3d 996 (Fed. Cir. 2018), a post-*i4i* decision that Ravgen says "explain[s] *Dynamic Drinkware*," holds that "[t]he same basic framework" for burdens of persuasion and production applies to both district court and PTAB proceedings. *Id.* at 1007. Here, a reasonable jury could have concluded that Ravgen's evidence was insufficient to overcome Labcorp's persuasive case that Landes's publication date *was* its priority date.

**B.** Ravgen seeks to have this Court sidestep entirely the court's errors and go no "further" than to hold that "IPR estoppel bars a petitioner from maintaining § 103 arguments based on patents and printed publications after an affirmed FWD." RavgenBr.39. The Court should reject this suggestion.

*First*, Labcorp's challenge goes to the very fairness of the trial. This alone distinguishes it from *Olaplex, Inc. v. L'Oréal USA, Inc.*, 855 F. App'x 701 (Fed. Cir. 2021) (nonprecedential). Labcorp neither "raised [n]or reasonably could have raised" an unfair-trial challenge "during that inter partes review." 35 U.S.C. § 315(e)(2); *Olaplex*, 855 F. App'x at 713. That goes not just to the correctness of Labcorp's invalidity defense, but to Ravgen's "improper and prejudicial" arguments. *Magēmā Tech.*, 153 F.4th at 1257-58.

*Second*, regardless of the "obviously statutory" nature of 35 U.S.C. § 315(e)(2), RavgenBr.43 n.8, Congress codified it as "Estoppel," calling on that doctrine's equitable roots. Inflexibly applying § 315(e)(2) would be inequitable: Ravgen successfully *opposed* Labcorp's effort to stay this litigation pending the IPRs (Appx6316-6330, Appx6692-6705, Appx7153), causing the case to be tried before the IPR decisions. The court's erroneous midtrial exclusion then allowed Ravgen to turn Labcorp's opening-statement promise to prove invalidity against it, improperly and prejudicially.

Nothing in the statute or legislative history suggests that § 315 was intended to preclude appellate review and reversal of invalidity arguments that would have been timely and non-estopping but for district-court errors. Labcorp should be allowed to litigate invalidity as though the court's September 2022 errors had not occurred.

## III. THE COURT ABUSED ITS DISCRETION BY REFUSING TO HOLD A HEARING ON EQUITABLE ESTOPPEL

**A.** Labcorp preserved this defense at every turn. LabcorpBr.39-40. Judge Albright himself confirmed that "everything [Labcorp's lawyer] said" about why there was no waiver "is technically accurate," but denied Labcorp's motion, saying it "offend[ed]" him. Appx105-106(14:22-15:7). Ravgen ignores key facts, substitutes its own reasoning for the court's, and relies on unspoken, unwritten local "practice," never rebutting Labcorp's abuse-of-discretion showing.

*First*, the joint pretrial order did not merely "list" (let alone "bur[y]") equitable estoppel (RavgenBr.50); it assigned the issue's "determination" to the court. Appx20816; *see* Appx20801-20802. That sufficiently preserved the defense. *AdvoCare Int'l LP v. Horizon Labs., Inc.*, 524 F.3d 679, 691 (5th Cir. 2008). Ravgen's suggestion that Labcorp "conditional[ly] request[ed]" rather than "clear[ly] demand[ed]" a separate bench trial (RavgenBr.50) is baseless: a subsequent bench trial on equitable estoppel would have been unnecessary and advisory had the jury found Labcorp not liable. *See, e.g.*, *Oracle Am., Inc. v.*

*Google Inc.*, No. 10-cv-035161, 2012 WL 1965778, at *1-2 (N.D. Cal. May 31, 2012) ("defense[] of equitable estoppel" moot, "at least pending appeal," following defense verdict).

Ravgen's legally incorrect assertion that including equitable estoppel in the pretrial order "was not enough to prosecute the defense" also contradicts the record. RavgenBr.50. Ravgen ignores that Judge Albright was not present to receive the jury's verdict—Labcorp could not "prosecute" its defense before Magistrate Judge Gilliland. LabcorpBr.40. Unlike in Ravgen's cited district-court case involving indefiniteness, the court here did not "provide the parties with time limits and general guidelines regarding trial procedure," including that "the time limits were inclusive of all issues, including issues to be tried to the bench." *Fractus, S.A. v. Samsung Elecs. Co.*, 876 F. Supp. 2d 802, 838-39 (E.D. Tex. 2012).

*Second*, Ravgen ignores the due-process implications of allowing unspoken, unwritten local "practice" to displace Labcorp's right to present its equitable-estoppel defense. LabcorpBr.40-41. Citing only Judge Albright's own statement at the post-trial motions hearing that "I have done it" (conducted a bench trial during jury breaks), Ravgen claims that "[t]he Western District of Texas follows this standard practice." RavgenBr.48. Then and now, that "standard practice" appeared nowhere in the Local Rules, https://www.txwd.uscourts.gov/court-

information/lcr-civil-rules; or in Judge Albright's standing orders for patent cases (https://www.txwd.uscourts.gov/wp-content/uploads/2025/03/ADA-Standing-Order-Governing-Proceedings-Patent-Cases-ATX_3.5.25.pdf); or pretrial proceedings (https://www.txwd.uscourts.gov/wp-content/uploads/2025/02/Draft-Standing-Order-for-Pretrial-Procedure_2132025.pdf).

Nor is this "practice" even "standard." Parties typically try equitable issues after (occasionally, before) a jury trial. *See, e.g.*, *Alfred E. Mann Found. for Sci. Rsch. v. Cochlear Corp.*, 841 F.3d 1334, 1339 (Fed. Cir. 2016) (bench trial over a year after jury trial); *Romag Fasteners, Inc. v. Fossil, Inc.*, 817 F.3d 782, 784 (Fed. Cir. 2016), *cert. granted, judgment vacated*, 580 U.S. 1214 (2017), *and reinstated in part by* 686 F. App'x 889 (Fed. Cir. 2017) (two-day bench trial on "equitable defenses" after seven-day jury trial); *Apotex Inc. v. UCB, Inc.*, 763 F.3d 1354, 1358 (Fed. Cir. 2014) ("three-day bench trial on claim construction and UCB's equitable defenses" before jury trial).

*Third*, Labcorp did not need to file a bifurcation motion to preserve its day in court on equitable estoppel. RavgenBr.49-50. This heretofore-unraised argument is forfeited. Appx28276-28277; *Cal. Ridge Wind Energy LLC v. United States*, 959 F.3d 1345, 1351 (Fed. Cir. 2020) (collecting cases). Ravgen agreed in the joint pretrial order that the issue needed to be tried separately; the court never faulted Labcorp for not filing an unnecessary Rule 42(b) motion. Appx94-106.

**B.** Labcorp showed that Ravgen's infringement suit should have been barred by Ravgen's $300 million demand in 2009 followed by a decade-plus of misleading silence—during which Labcorp built a billion-dollar NIPT industry. LabcorpBr.42 (trial evidence and offer of proof). Ravgen ignores these facts.

Ravgen's legal arguments fare no better. Ravgen says Labcorp is "rehash[ing] … laches." RavgenBr.51. But Ravgen did far more than delay; it *affirmatively misled* Labcorp through "inaction" and "silence where there was an obligation to speak." *ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1063 (Fed. Cir. 1995). Ravgen's suggestion that Labcorp did not show a "vigorous" enforcement threat (RavgenBr.51) contradicts Ravgen's assertion—just five pages later—that "***every license*** is negotiated against the threat of litigation." RavgenBr.56 (emphasis Ravgen's). Finally, contrary to Ravgen's incorrect statement of the law (RavgenBr.51), Labcorp's "development of its" NIPT business in reliance on Ravgen's silence "represents a significant change in economic position … sufficient to support equitable estoppel." *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1312 (Fed. Cir. 2010). Why would Labcorp purchase Sequenom for $300 million if it had believed it was buying a $300-million-plus litigation threat?

## IV. THE EXCESSIVE DAMAGES AWARD WAS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND PRODUCED BY UNRELIABLE EXPERT TESTIMONY

Expert-witness legerdemain transformed five nuisance-value litigation settlements (of $58,000 to $450,000) into an opinion that Ravgen should receive a "reasonable" royalty of $272,497,400. The jury awarded that massive amount to the penny. This is just the kind of unreliable testimony, unsupported by "sufficient facts or data," that led to reversal of the same court in *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333 (Fed. Cir. 2025) (en banc). Reversal is compelled here, too.

### A. Meyer Failed to Apportion

The '277 patent's alleged improvement resided *entirely* in the $5 off-the-shelf Streck tubes. That's undisputed. The accused tests, marketed for $475 on average, included numerous unpatented elements (e.g., MPSS DNA sequencing). Also undisputed. And Ravgen's expert never showed that the content of the Streck tubes was the sole driver of demand, such that the entire market value was an appropriate royalty base. LabcorpBr.44. This rendered Meyer's opinion unsupported by sufficient facts or data, and thus inadmissible. *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp.*, 879 F.3d 1332, 1349 (Fed. Cir. 2018).

Ravgen acknowledges that Meyer utilized "built-in" apportionment for the Ravgen and Sequenom Agreements. RavgenBr.66-69. Ravgen nonetheless claims that Meyer "synthesized" this allegedly "built-in" apportionment into a $100-per-

unit royalty by "providing upward and downward adjustments based on the impact of other *Georgia-Pacific* factors." RavgenBr.54, 67. "Synthesizing" is generous: Meyer presented the royalty rates he extrapolated from the Ravgen and Sequenom Agreements—without further apportionment—and then picked a number within that unreasonable range as his "reasonable" royalty. LabcorpBr.54-55; Appx24149. Meyer's failure to apportion "cannot be justified simply because [he] made a series of blanket upward and downward adjustments based on [the *Georgia-Pacific*] factors." *Jiaxing Super Lighting Elec. Appliance, Co. v. CH Lighting Tech. Co.*, 146 F.4th 1098, 1112 (Fed. Cir. 2025).

### B. Admitting Meyer's Testimony Was an Abuse of Discretion

Permitting Meyer's reliance on so-called "built-in apportionment" was an abuse of discretion: The agreements lacked the requisite comparability. LabcorpBr.43-56. Ravgen's response fails to show otherwise.

***1. The Ravgen Settlements.*** Meyer extrapolated a royalty rate from the five litigation settlements into an ongoing, per-unit royalty on Labcorp's sales. LabcorpBr.50. That is what *EcoFactor*, 137 F.4th at 1338, forbade—admitting an "opinion that the licenses show industry acceptance of an $X per unit royalty rate" where the licenses did not provide such "facts or data." LabcorpBr.46-51. Ravgen's contrary arguments misstate the record and mischaracterize the law.

**a.** As in *EcoFactor*, the Ravgen Agreements contradict Meyer's opinion that *each* agreement's lump-sum was based on an established royalty-rate structure. LabcorpBr.46-51. Ravgen says *EcoFactor* does not apply because the Ravgen Agreements do not "***'expressly disavow'*** any royalty rate." RavgenBr.56 (emphasis Ravgen's). *EcoFactor*'s holding was not so limited. Ravgen then claims that, unlike *EcoFactor*, here "the parties negotiated the rates and then *incorporated the royalty structure into the agreements' terms.*" RavgenBr.57.

Ravgen is wrong. The PerkinElmer, Thermo Fisher, and Inivata agreements mention *no* royalty rates, nor otherwise describe how the lump-sum payments were calculated. LabcorpBr.47-49. As in *EcoFactor*, those agreements' plain language refutes Meyer's testimony—asserted "with the imprimatur of his expertise" (137 F.4th at 1341)—that *all* licensees who paid lump sums agreed to "this royalty structure." Appx25240-25245(562:11-567:7). His demonstratives confirm that he presented *all five* agreements together as establishing the "Ravgen Royalty Structure," which he then applied—unadjusted—to Labcorp's sales. RavgenBr.58; Appx24132-24135. That testimony is inadmissible under *EcoFactor*.

**b.** Like the CEO testimony in *EcoFactor*, Dhallan's self-serving testimony regarding an established royalty structure could not support Meyer's opinions—it was "an unsupported assertion from an interested party." LabcorpBr.49; *EcoFactor*, 137 F.4th at 1343-44. Counsel conducted the

negotiations—Dhallan "wasn't involved in the details," and knew nothing about how the lump sums were calculated. Appx24845(167:21-23); Appx10526-10527. Yet Ravgen says Dhallan's uninformed testimony "corroborated" Meyer's opinion that "*each* agreement's sum was 'based on the rate and the level of sales' of *each* licensee." RavgenBr.58. That "unsupported assertion" is not "a sufficient factual basis for" Meyer's testimony. *EcoFactor*, 137 F.4th at 1344.

Ravgen's other citations are similarly insufficient. The PerkinElmer agreement recites an amount of past U.S. sales of certain products, but nowhere ties those amounts to the lump-sum payment or reflects any royalty rate applied to those sales. Further, contrary to Ravgen's claim, [redacted]% of those sales does not equal the lump sum. RavgenBr.57; Appx10441. As for the Ravgen-produced "Thermo Fisher Royalty Analysis spreadsheet," Meyer gave no testimony explaining it. RavgenBr.58; Appx24601. Dhallan did not know who created it or if it was shared with Thermo Fisher. Appx10518-10519. That cannot justify Meyer's conclusions.

**c.** *All* five Ravgen agreements—including Clinical Genomics and PGDx (the only two that even advert to any royalty structure)—licensed rights far beyond the asserted '277 patent. LabcorpBr.50-51. Ravgen says this is inconsequential because they "licensed just two closely related licensed patents—the '277 Patent and the '720 Patent," thus supporting Meyer's conclusion "that his royalty opinion would not change whether it was one or both patents." RavgenBr.59-60. But the

agreements licensed far more than just two patents (four of the five licensed *Ravgen's entire portfolio*).

Meyer admittedly did not account for these differences. Appx25246-25247(568:21-569:17). This Court recently held—in an opinion Ravgen could have cited but did not—that an expert was properly excluded where he failed to allocate a lump-sum license to multiple patents. *Rex Med., L.P. v. Inuitive Surgical, Inc.*, 156 F.4th 1289, 1297-98 (Fed. Cir. 2025). Meyer's unreasoned conclusion that the '720 patent (or Ravgen's other patents) did not contribute at all to the lump-sum payments is further contradicted by the fact that Ravgen's litigation-threatening letters never mentioned the '277 patent. LabcorpBr.48-49; Appx10863-10874.

**d.** Meyer's reliance on a most-favored-nation clause in the Inivata agreement also compelled exclusion. LabcorpBr.49-50. Ravgen never claims that clause is reliable. It instead backpedals, claiming that Meyer "did not rely on the Inivata license in his reasonable royalty analysis" because he had "less information regarding the sales and how it was negotiated." RavgenBr.58-59. (Yet Ravgen asserts that the most-favored-nation clause was "an extra datapoint for confirmation." RavgenBr.59.) This makes Labcorp's point: Meyer did not have sufficient information to rely on the other Ravgen agreements either, yet testified

that *all five together* established the "Ravgen Royalty Structure." LabcorpBr.50, 54-55; *EcoFactor*, 137 F.4th at 1343.

**e.** Ravgen claims the Ravgen Agreements (other than PerkinElmer) were not "litigation-driven settlement[s]." RavgenBr.55-56. Ravgen protests too much. All five agreements were negotiated after Ravgen filed lawsuits against Labcorp and others; Ravgen's letters threatening the eventual licensees all said "we have commenced litigation against several of the other companies in this market." Appx10863-10874. This makes Meyer's failure to account for the litigation-settlement factor disqualifying: "[L]icense fees that are tainted by the coercive environment of patent litigation are unsuitable to prove a reasonable royalty." *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012).

***2. The Sequenom Agreements.*** Meyer did not adequately account for the numerous technological and economic differences between the hypothetical negotiation here and the three Sequenom Agreements, which licensed patents directed to different technology. LabcorpBr.51-54. Ravgen seeks to justify Meyer's testimony with a series of blanket upward and downward adjustments he allegedly made:

(i) "an upward adjustment because the '277 patent was more valuable technically" (RavgenBr.63-64);

(ii) "adjusted the Sequenom agreements upward because the valid and infringed assumption [and] lack of relationship" (RavgenBr.65); and

(iii) "adjusted some agreements downward because Labcorp's sales volume and infrastructure would have given it bargaining power against Ravgen, and the ISIS-Sequenom and Sequenom-Mayo agreements included know-how" (*id.*).

Meyer did not explain these "adjustments," or assign them any weight or amounts. It was just for show, anyway: Meyer never actually adjusted the agreements' royalty rates *at all*. Appx24149. His "superficial recitation of the *Georgia-Pacific* factors, followed by conclusory remarks, cannot support the jury's verdict," *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 31 (Fed. Cir. 2012), nor can his testimony be justified by "blanket upward and downward adjustments." *Jiaxing Super Lighting*, 146 F.4th at 1112.

Ravgen also cannot justify Meyer's testimony in light of the different scope of the Sequenom-Mayo and Sequenom-Quest Agreements, which included numerous patents and applications, including foreign patent rights. Ravgen says Meyer accounted for those numerous other assets by "limit[ing] his comparison to issued U.S. patents," since "[a] Sequenom licensee selling the products domestically would pay the stated per unit rate for the right to practice the U.S.-issued patent," and the foreign patents do not provide a right-to-exclude that "matters to the domestic product." RavgenBr.65. Were that correct, *all* foreign patent rights included in *any* allegedly comparable license could be ignored and assigned zero value. That is neither the law nor compatible with common sense. Plus, *Rex Medical* holds that expert testimony "*must* account for distinguishing

facts such as covering more patents than are at issue in the action and covering foreign intellectual property rights." 156 F.4th at 1300 (cleaned up).

### C. Excluding Prowse's Testimony Was a Further Abuse of Discretion

Admitting Meyer's testimony was prejudicial. Excluding Prowse's testimony that the proper royalty base was the $5 Streck tube compounded that prejudice, preventing Labcorp from effectively countering Ravgen's monster damages claim. LabcorpBr.55-56. Ravgen's response ignores its own admissions that the patented improvement was the tubes' contents alone—not DNA sequencing, nor anything else. LabcorpBr.55. It was inappropriate for the court to exclude Prowse's testimony because the claims include conventional steps of sample preparation and analysis (Appx57)—in effect, endorsing Ravgen's damages model and preventing presentation of Labcorp's, which satisfied *Exmark*, 879 F.3d at 1348-49. The mere mention of the price of the Streck tube by a fact witness (RavgenBr.70) came nowhere close to curing the prejudice.

## V. RAVGEN CANNOT SALVAGE THE WILLFULNESS AND ENHANCEMENT RULINGS

Neither the willfulness finding nor the $100 million enhancement can stand.

### A. Ravgen Failed to Prove That Labcorp Believed It Was Infringing

#### 1. Labcorp's understanding of Streck's tubes contradicts any inference of willfulness

Labcorp reasonably relied on Streck's—a third-party vendor's—public representations that its tubes used IDU and glycine, not formaldehyde, to inhibit cell lysis. Appx25500(822:3-5); Appx25971-Appx25972(1293:19-1294:6). Streck's own CEO confirmed that formaldehyde is not part of Streck's process. Appx25505(827:15-20). Willful infringement is "a measure of reasonable commercial behavior," *Wonderland Switz. AG v. Evenflo Co.*, Nos. 23-2043, 23-2233, 23-2326, 2025 WL 3648495, at *8 (Fed. Cir. Dec. 17, 2025), and relying on a supplier's consistent, public, and accurate disclosures about what its product contains is paradigmatic "reasonable commercial behavior." Labcorp did not proceed despite a known or obvious risk of infringement; it proceeded on the commercial understanding that Streck's tubes did not use formaldehyde. Labcorp therefore could not have had "a specific intent to infringe at the time of the challenged conduct." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987 (Fed. Cir. 2021).

Ravgen does not attempt to defend the court's three-sentence willfulness analysis. Instead, it cites unexceptional facts—Labcorp knew about Ravgen's

patent and explored licensing it (RavgenBr.72-73)—resting its willfulness theory on the curious, carefully worded assertion that Labcorp "knew that the use of Streck tubes *involves* formaldehyde and cross-linking as the mechanism of inhibiting cell lysis." RavgenBr.73.

None of the three pieces of evidence Ravgen cites—Appx37328, Appx25555, and Appx37188—says what Ravgen suggests. One in fact says the opposite—that formaldehyde's cross-linking properties are *a problem, not a benefit*, because "*[f]ormaldehyde cross links may interfere with extraction of circulating fetal DNA or with PCR amplification of fetal or total DNA*." Appx37188. This confirms Labcorp's belief that formaldehyde—if present—was both incidental and undesirable, and that the Streck tubes avoided that by using IDU (not formaldehyde) to cross-link, and glycine to quench any "interfer[ing]" formaldehyde. Labcorp thus had a good-faith belief that it wasn't infringing. Nothing in the record supports the implausible proposition that Labcorp disbelieved Streck.

#### 2. A years-old hearsay remark cannot support the willfulness verdict

Lacking concrete evidence of knowing infringement, Ravgen pivots to a weak fallback—a vague, secondhand remark made a decade pre-trial. A former employee supposedly told Dhallan in 2012 that Labcorp "knew" that it "would be infring[ing]" one of Ravgen's patents. Appx24821-24824(143:23-146:10). The

’277 patent?  No evidence of that.  Corroboration?  None.  Documentary support? Also none.

Plus, the alleged remark *referred to something entirely different*—a short-lived “send-out” arrangement in which Labcorp collected samples and forwarded them to Ariosa for analysis.  Appx24823-24824(145:24-146:14); Appx24908-24909(230:8-231:9).  That arrangement was never accused of infringing.  And Dhallan offered no testimony linking the remark to the test at issue or to any belief by Labcorp that it was infringing.

### B. Ravgen’s Legal Violations and the Court’s Evidentiary Error Independently Require Reversal

***Section 298.***  What Ravgen did is what 35 U.S.C. § 298 prohibits—inviting the jury to infer that Labcorp acted willfully because it did not disclose advice of counsel.  Ravgen made that a central trial theme.

Ravgen declines to defend the court’s erroneous reasoning rejecting Labcorp’s § 298 argument.  Instead, it says any error was harmless, and that conveying the information through nonlawyer witnesses does not violate the statute.  Both are wrong.  As to harmlessness, willfulness was hotly disputed.  The jury heard that Labcorp had consulted attorneys, LabcorpBr.63, but was shown no opinion letter and given no instruction that such silence could not support an inference of willfulness.  Ravgen exploited that gap, repeatedly implying that Labcorp sought legal advice, hesitated, and then chose to infringe regardless.  *Id.*

Section 298 bars this: By failing to give a curative instruction, the court allowed the jury to rely on an inference Congress expressly forbade. That was not harmless.

As to Ravgen's claim that it elicited this testimony from nonlawyers, that is an untenable reading of the statute. The statute is agnostic about the source of the prohibited evidence of "failure of an infringer to obtain the advice of counsel [or] to present such advice to the court or jury." Section 298 bars the *inference itself*, regardless of source, and contains no exception for indirect presentation. Ravgen does not deny—it cannot—that this forbidden inference was a centerpiece of its willfulness case. LabcorpBr.62-63 (citing Appx23996, Appx24819(141:11-18), Appx25417(739:4-20), Appx25610-25611(932:21-933:5), and Appx25878-25880(1200:20-1202:2)). After the court refused Labcorp's proposed curative instruction (Appx25824-Appx25826(1146:10-22-1148:8)), Ravgen, emboldened, pushed the inference further in closing, contending Scholl "met with the IP attorneys," did not testify, and would have had to admit "they need the patents." Appx26039(1361:7-20). Section 298 prohibits this.[2]

[2] Labcorp repeatedly objected to Ravgen's § 298 violations and requested a curative instruction. LabcorpBr.62 n.3. Ravgen does not dispute that the court definitively ruled—pretrial and at trial—preserving the claim for appeal. *Id.* (citing record); Fed. R. Evid. 103(b).

***Excluding Internal Testing.*** Labcorp's strongest evidence of non-willfulness was that Ravgen's method degraded DNA, which justified Labcorp's preference for Streck's tubes—demonstrating Labcorp's belief that it was not using Ravgen's method. LabcorpBr.64-66. The jury never heard that story. This exclusion impermissibly distorted the willfulness record and prejudiced Labcorp.

Ravgen's attempts to justify the exclusion are meritless. *First*, it claims Dr. Watson lacked personal knowledge. But she reviewed the data, participated in the evaluation, and helped assess the results (LabcorpBr.65)—amply satisfying Rule 602. *Second*, Ravgen says that Labcorp never argued the evidence was being offered for a non-hearsay purpose—but *two pages after* the citation Ravgen offers (RavgenBr.78 (citing Appx27421)), Labcorp did exactly that: "Even if she had lacked personal knowledge, the evidence was still being offered for a non-hearsay purpose ... to show its state of mind." Appx27423. *Third*, Ravgen says there was no prejudice. Of course there was. This was Labcorp's clearest, most contemporaneous evidence of non-willfulness. Excluding it left the jury with Ravgen's one-sided picture of intent.

### C. No "Egregious," "Pirate"-Like Conduct Merited the $100 Million Penalty

The enhancement should fall because Ravgen's willfulness case fails. *Omega Pats., LLC v. CalAmp Corp.*, 920 F.3d 1337, 1351 (Fed. Cir. 2019). It also cannot stand because the court ignored *Halo*'s central command—that

enhancement is for "egregious cases" of malicious piracy. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103-04 (2016). Ravgen barely defends that result.

Ravgen does not dispute that the court flipped the burden of proof as to whether Labcorp had a good-faith belief of noninfringement. LabcorpBr.67-68; Appx113. This alone would require remand.

But outright reversal is compelled. By woodenly applying the *Read* factors, and making findings that the "malice" or "piracy"-related ones were absent, the court's order on its own terms establishes the impropriety of enhancement. *Halo*, 579 U.S. at 103-04.

Yet Ravgen says courts may justify enhancement solely on generalized *Read* factors—including malice-or-piracy-neutral ones like company size or litigation conduct. RavgenBr.79-80. This Court has rejected that view. In *Presidio Components, Inc. v. American Technical Ceramics Corp.*, 875 F.3d 1369, 1382-83 (Fed. Cir. 2017), this Court held that when *Halo* "articulated the current controlling test for decisions to award enhanced damages, it did not require the *Read* factors as part of the analysis," and instead required courts to "*determine whether it is egregious*."

Ravgen's only cited authority—*SRI International, Inc. v. Cisco Systems, Inc.*, 14 F.4th 1323 (Fed. Cir. 2021)—demonstrates the inadequacy of its enhancement case. There, the defendant not only willfully infringed but did so

repeatedly, even after remand, showing "apparent disdain for SRI and its business model." *Id.* at 1330. And the court found the defendant had "crossed the line in several regards." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 254 F. Supp. 3d 680, 722 (D. Del. 2017). Here, Labcorp consulted counsel, relied on a commercially available product disclosed as containing IDU and glycine but not formaldehyde—and "quenching" even trace amounts of formaldehyde. No copying, no concealment, no repeated misconduct, no disregard for the patent system.

## CONCLUSION

The judgment should be reversed. If any remand is necessary, the case should be reassigned (LabcorpBr.68)—Ravgen offers no response to Labcorp's showing that reassignment in the interest of justice is warranted.

Dated: December 22, 2025

Respectfully submitted,

/s/ *Gregory A. Castanias*
Gregory A. Castanias
Tracy A. Stitt
Amelia A. DeGory
Brendan D. Duffy
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939

John R. Boulé III
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071
(213) 489-3939

*Counsel for Defendant-Appellant Laboratory Corporation of America Holdings*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and Federal Circuit Rule 32(b)(1) because it contains 6,995 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Times New Roman 14-point font.

Dated: December 22, 2025

/s/ *Gregory A. Castanias*
Gregory A. Castanias
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939

*Counsel for Defendant-Appellant Laboratory Corporation of America Holdings*

## **CERTIFICATE OF COMPLIANCE WITH RULE 25.1(e)(2)**

I certify that the foregoing brief complies with the limitations set forth in Federal Circuit Rule 25.1(d)(1)(A) and contains one unique word marked as confidential.

Dated: December 22, 2025

Respectfully submitted,

/s/ *Gregory A. Castanias*
Gregory A. Castanias

# <u>CERTIFICATE OF SERVICE</u>

I certify that I served a copy of the foregoing filing on December 22, 2025, by email on the below individuals at the following locations.

| **Person Served** | **Service Location** |
|---|---|
| John M. Desmarais | jdesmarais@desmaraisllp.com |
| Kerri-Ann Limbeek | klimbeek@desmaraisllp.com |
| Brian D. Matty | bmatty@desmaraisllp.com |
| Frederick J. Ding | fding@desmaraisllp.com |
| Raymond Habbaz | rhabbaz@desmaraisllp.com |
| Gillian Moore | gmoore@desmaraisllp.com |

Dated: December 22, 2025

Respectfully submitted,

/s/ *Gregory A. Castanias*
Gregory A. Castanias